IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| RICHLAND PARTNERS, LLC, JOHN PAYNE, and ROGER HALL,<br><br>Plaintiffs,<br><br>vs.<br><br>COWRY ENTERPRISES, LTD.,<br><br>Defendant. | CV 14-14-BLG-SPW<br><br>ORDER AND OPINION |

Plaintiffs Richland Partners, LLC, John Payne and Roger Hall ("Richland Partners") filed this action against Defendant Cowry Enterprises, LTD, ("Cowry") for property damage, negligence, strict liability, negligent misrepresentation, constructive fraud, trespass, nuisance, and tortious interference. (Doc. 1-3). Richland Partners has moved to file an amended complaint to add "Phillips Petroleum Company a/k/a Conoco Phillips Company, Inc." as a party defendant. (Doc. 12). Cowry opposes the motion. (Doc. 13). For the reasons stated below, the motion is denied.

## I. Background

In the early 1980s, a company named Aminoil drilled some oil wells in Eastern Montana. (Doc. 12 at 2). While drilling at least one of the wells, Aminoil reclaimed a reserve pit. (Doc. 13 at 4). A reserve pit is a storage area dug in the ground that acts as a small reserve for storing spare or waste mud, base oil, water or brine while drilling an oil well. (*Id.*) During the early 1980's, when the well was drilled, companies typically used a reserve pit while drilling a well. (*Id.*) At the end of the drilling operations, the reserve pit was drained and reclaimed by filling the pit and placing soil on top. (*Id.*) In 1981, Aminoil settled a claim for surface damages to the land resulting from "drilling and production operations." (*Payne Depo.*, Ex. 13, Doc. 13-3) (*see also Glymin Depo.*, Doc.13-5).

In approximately 1984, Phillips Petroleum Company purchased Aminoil and became owner/operator of the wells. (Doc. 12 at 2). In 1988, Conoco purchased ownership and operation of the wells from Phillips. (*Id.*) In 1993, Cowry assumed ownership and operation of the wells from Conoco. (*Id.* at 3). In the Purchase and Sale Agreement between Conoco and Cowry, Cowry and Conoco agreed that Cowry would not assume any liabilities of Phillips or indemnify Conoco on any claim for which Phillips was liable. (*Purchase and Sale Agmt*, Doc. 12-3).

In 2012, Plaintiffs Roger Hall and John Payne purchased 37 acres of land to develop an RV and Industrial Park for employees and their families working in the Bakken oil fields. (Doc. 12 at 2). Two of Cowry's inactive oil pads and wells are located on the land and a third pad and well is adjacent to the land. (*See* Doc. 8 at 2; *see also Glymin Corr.* (May 4, 2013), Doc. 3-C). Prior to the land purchase, Richland Partners discovered the existence of the oil pads and learned that Cowry had not performed oil exploration activities on the oil pads for many years. (Doc. 6 at ¶ 12). At the time of the purchase, an "old reserve pit" was listed as a "soil problem" and "two oil wells" were listed on the seller's property disclosure statement, which Hall initialed and signed on February 10, 2012. (*Rice Depo.*, Ex. 4; Doc. 13-1). After the purchase, Hall and Payne formed Richland Partners to run the property. (*Payne Depo.* 20:24-21:2, Doc. 13-3).

Richland Partners hired Territorial Landworks to conduct due diligence prior to the purchase and to assist with the subdivision approval process after purchasing the property. (Doc. 13 at 3). Territorial Landworks owner Jason Rice "found" the reserve pit on Richland Partners' land in 2012. (*Rice Depo.* 100:2-6, Doc. 13-1). Territorial Landworks also discovered "the existence of oil waste at various levels" on Richland Partners' property after it was purchased. (Doc. 6 at ¶ 30). Based on this discovery and subsequent events that occurred when Richland Partners

attempted to get its subdivision approved, Richland Partners filed suit against Cowry, and accused Cowry, in relevant part, of contaminating Richland Partners' property with oil. (Doc. 1-3).

Cowry removed the action to federal court and filed its Answer on February 19, 2014, where it denied ever engaging in drilling operations on the subject property. (Doc. 3 at 6). Cowry also asserted as affirmative defenses that "any contamination on the plaintiff's property existed before they purchased it" and that Richland Partners' damages "were caused by the actions of persons or entities other than Cowry." (*Id.* at 11,12).

Both parties submitted preliminary pretrial statements on April 23, 2014. (Docs. 8, 10). Richland Partners asserted that "Cowry had damaged the real property located around the wells as oil from the Cowry wells had seeped throughout Plaintiffs' property." (Doc. 8 at 4). In contrast, Cowry asserted that the alleged contamination on the land at issue was "residue left in a historic reserve pit" from when the wells were originally drilled in the '80s. (Doc. 10 at 4). According to Cowry, "a number of companies including Aminoil" had an interest in the property when the pit was dug in 1980, but Cowry was "not involved in drilling and had no interest in [the wells] when they were drilled," and was "never in control of the area where the reserve pit was located. " *Id.* Cowry also asserted that

Phillips acquired Aminoil after 1981 and it was not until 1993 that Phillips sold the production equipment to Cowry. *Id.* Consistent with the recitation of the facts, Cowry stated in its defense to Richland's negligence claim that, "Cowry was not involved when the historic reserve pit was reclaimed, never had an interest in the area where it was located, and owed no duty to Richland Partners with respect to it." *Id.* at 5. Similarly, in its defense to Richland's strict liability claim, Cowry stated, "a party cannot be held strictly liable for abnormally dangerous activity when a different defendant was responsible for what caused the injury." *Id.* at 6.

On May 1, 2014, this Court entered a scheduling order which set an August 1, 2014, deadline to amend pleadings, including joinder of parties. (Doc. 11 at ¶ 1). In June, a series of depositions occurred in this matter. On June 5, 2014, Territorial Landworks owner Jason Rice testified that the oil residue on Richland Partners' property was likely from the old reserve pit left over from when a well was initially drilled. (*Rice Depo.* 100:2-22; Doc. 13-2). During his deposition, he was asked if he knew the reserve pit was listed on the seller's property disclosure statement to Richland Partners. (*Id.* at 84:1-85:8). The disclosure statement was provided to Richland Partners' counsel and marked as an exhibit to his deposition. (*Id.*) The same day, Plaintiff John Payne agreed that the oil residue on the land was likely from the old reserve pit. (*Payne Depo.* 38:15-20, 40:17-20; Doc. 13-3). He was also

5

questioned about the sellers' disclosure statement and the fact that the pit was listed. (*Id.* at 15:14-16:16). He said he had not seen the disclosure but became aware of the pit in 2013. (*Id.*). The disclosure statement was also marked as an exhibit to his deposition. (*Id.*) Payne testified that he had no reason to believe that the oil residue came from the Cowry property. (*Id.* at 40:5-20). Approximately a week later, Cowry's founder, Derick Glyman testified in his deposition that Cowry had no liability for the reserve pit because, "one of the documents in our files is that the landowner was paid liquidated damages. He took the land back as is before we took it over." (*Glyman Depo.* 57:18-58:17; Doc. 13-5).

On August 12, 2014, after the deadline to amend pleadings passed, Richland Partners filed a motion to amend its complaint to join "Phillips Petroleum Company a/k/a Conoco Phillips Company, Inc.," as a defendant in the suit. (Doc. 12). Cowry opposed Richland Partners' motion. (Doc. 13). In its reply, Richland Partners also requested to amend the scheduling order. (Doc. 14). It did not, however, file a separate motion.

## II. Discussion

### A. Motion to Amend

A timely motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that "a party may amend its pleading only with the

opposing party's written consent or the court's leave" and leave shall be given freely when justice so requires. Fed. R. Civ.P. 15(a)(2). Rule 15(a) does not govern Richland Partners' current request, however. Where, as here, the court has issued a scheduling order setting a deadline to amend the pleadings, a party must first move to amend the scheduling order under Rule 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R.Civ.P. 16(b)(4). Unlike Rule 15's liberal amendment policy which focuses on the bad faith of the party seeking amendment, "Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. In other words, good cause exists if a party can demonstrate that the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (citations omitted). One district court in this Circuit synthesized the applicable case law and determined that, in order to demonstrate diligence, a party must be able to show:

> "(1) that [it] was diligent in assisting the Court in creating a workable Rule 16 order . . ; (2) that [its] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling

7

conference . . . ; and (3) that [it] was diligent in seeking amendment of the Rule 16 order, once it became apparent it could not comply with the order. . ."

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (internal citations omitted). Not surprisingly, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* If the district court finds a lack of diligence, "the inquiry should end," because a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 609, 610. The party seeking to continue or extend the deadlines bears the burden of proving good cause. *Id.* at 608-09; *see also Zivkovic v. S.Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

If the movant clears the Rule 16 "good cause" bar, the court proceeds to consider the motion under the usual Rule 15 standard. *Id.* at 608. The court may deny as untimely a motion for leave to amend filed after the scheduling order deadline where no request to modify the scheduling order has been made. *Id.* at 609 (citing *U.S. Dominator v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (superseded by statute on other grounds).

Because the pleading amendment deadline in this case was August 1, 2014, (*see* Doc. 11), and Richland Partners filed its motion to amend on August 12, 2014, Richland Partners' motion was unquestionably late. And because Richland failed

8

to first move to modify the scheduling order, this Court could simply deny Richland's motion as untimely. *See Johnson,* 975 F.2d at 608. The Court, however, declines to exercise that option and instead turns to whether good cause exists to relieve Richland Partners from the scheduling order.

In support of its motion to amend, Richland Partners asserts that it should be allowed to amend because, "through the discovery process, [Richland Partners] discovered the oil wells at issue in this case . . . were previously owned and operated by other entities, including Aminoil, Phillips and Conoco," thus "Phillips may be liable for the damages complained of by [Richland Partners]." (Doc. 12 at 2). It also contends that its delay was not in bad faith and is not prejudicial to Cowry.

In response, Cowry argues that Richland Partners failed to meet its burden of demonstrating good cause because it did not act diligently – that is, it knew the facts necessary to justify its requested amendment for months and simply failed to amend on time. In support of its argument, Cowry points the Court to the following: the Seller's Property Disclosure Statement (Doc. 13-1) which disclosed the reserve pit to Plaintiff Roger Hall on February 10, 2012; its Answer filed on February 19, 2014, in which Cowry asserted that other parties were responsible for Richland Partners' damages; and, its Preliminary Pretrial Statement filed on April 23, 2014, in which Cowry divulged the identity of the other parties responsible for Richland Partners'

damages. (Doc. 13). In its reply, Richland Partners argues that it had been diligent but that a family health emergency prevented counsel from addressing the issue during the first two weeks in July. (Doc. 14 at 2).

Richland Partners has failed to demonstrate good cause for its belated motion to amend. By April 2014, Richland Partners had sufficient information to join Phillips as a party if it so desired. In February 2014, Cowry noted in its Answer that another party was responsible for Richland Partners' property damages. (Doc. 3). In April, Cowry clarified that the soil samples on which Richland Partners based its Complaint were taken from a reserve pit on the land that Cowry had no part in digging or reclaiming. (Doc. 10 at 3-4). At the same time, Cowry also provided Richland Partners with the previous landowners' names (including Phillips) who were involved in drilling the well associated with the pit, as well as the dates of ownership, and again specifically stated that Cowry was not involved with the pit or any well drilling and could not be held liable for the resulting contamination. *Id.* at 4. In other words, by the end of April, 2014, Richland Partners had information demonstrating that the reserve pit on its land was likely the source of the contamination at issue and that Phillips and Aminoil, and not Cowry, was responsible for the pit.

That information was also corroborated during a series of depositions in June, 2014. On June 5, 2014, Territorial Landworks owner Jason Rice (hired to complete due diligence testing by Richland Partners) testified that the oil residue on the property was likely from the old reserve pit left over from when the well was initially drilled. (Doc. 13-2, 100:2-22 (June 5, 2014)). The same day, Plaintiff John Payne agreed that the oil residue on the land was likely from the old reserve pit. (Doc. 13-3, *Payne Depo.* 38:15-20, 40:17-20). He also testified that he had no reason to believe that the oil residue came from the Cowry property. (Id. at 40:5-20). On June 11, 2014, Cowry's founder, Derick Glyman, testified that Cowry had no liability for the reserve pit, because "one of the documents in our files is that the landowner was paid liquidated damages. He took the land back as is before we took it over." (Doc. 13-5, 57:18-58:17 (June 11, 2014)).

Thus, even giving Richland Partners the benefit of the doubt and assuming that it didn't have enough information to amend until after the June depositions,[1] Richland Partners still failed to act until August. The only explanation Richland Partners offers for failing to amend until after the amendment deadline is that Richland Partners' counsel was out of the office for the first two weeks in July due to a family health emergency. This Court understands that life exists outside the

---

[1] Though that is doubtful given Payne's admission that he believed the contamination on the land came from the pit and not Cowry and that he knew about the pit since 2013.

litigation arena and understands and sympathizes with counsel's need to be with his family for the first two weeks in July. Missing however, is any explanation of how counsel's absence during the first two weeks of July precluded Richland Partners from amending during the entire month of June or the last two weeks in July. Moreover, Ben Sather and Eric Holm are both designated as lead counsel for Richland Partners, (*see* ECF docket), but have not explained why Mr. Holm could not move to amend while Mr. Sather was tending to his family, or at least, request an extension of the amendment deadline.

As noted above, Richland Partners has had the information it now relies on to amend since June at the latest (and April at the earliest). "Failing to heed clear and repeated signals that not all the necessary parties [have] been named in the complaint does not constitute diligence." *Johnson*, 975 F.2d at 609. Applying the factors set out in *Jackson*, Richland Partners was diligent in assisting the Court in creating a workable Rule 16 order. 186 F.R.D. at 608. It failed, however, to provide to the Court any examples of its diligent efforts to comply with the amendment deadline, or any examples of other developments precluding it from complying with the deadline in June and the end of July. *Id.* It further failed to provide any evidence that it was diligent in seeking an amendment of the scheduling order in late July, after it became evident that counsel was running out of time to comply with the

12

amendment deadline. *Id.* Certainly Richland Partners had sufficient information to discuss extending the amendment deadline with opposing counsel, and if that failed, to bring a motion to amend the scheduling order prior to the deadline.

Richland Partners contends that it did not act in bad faith and Cowry cannot demonstrate prejudice, but under the Rule 16 analysis, bad faith and prejudice to the opposing party are considerations secondary to the diligence of the moving party. *Id.* By failing to provide any explanation for its inaction during June and the end of July, this Court can only conclude Richland Partners was simply not diligent in pursing the amendment. As a result, this Court finds no good cause for modifying the scheduling order under Rule 16(b)(4). Because good cause does not exist, no analysis under Rule 15 is necessary. *Id.* at 608.

### B. Joinder

Richland Partners argues that Phillips is an indispensable party and must be joined under Rule 19. This Court disagrees.

Rule 19(a)(1) of the Federal Rules of Civil Procedure sets forth the standards for determining whether joinder of additional parties is necessary. *EEOC v. Peabody W. Coal Co.,* 400 F.3d 774, 778 (9th Cir. 2005). The rule states, in relevant part:

a person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a). Under Rule 19(a), the court first looks at whether complete relief can be accorded to the parties to the action in the absence of the unjoined party. Fed.R.Civ.P. 19(a)(1). This inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action. *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (quoting 3 Moore's Federal Practice ¶ 19.07-1[1], at 19-93 to 98 (2nd 1980)). The effect a decision may have on the absent party is not material. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (11th Cir. 1993).

Richland Partners contends that without joining Phillips, this Court "may not be in a position to provide complete relief to both Plaintiffs and Cowry," but fails to

14

provide any reason other than Phillips might also be liable for Richland Partners' damages. (Doc. 12 at 6). In applying Rule 19(a)(1) to this case, the specific question is whether this Court can grant complete relief in a tort action to the parties before it when other joint tortfeasors may exist. The answer is yes. Simply because a party may be jointly liable does not render it a necessary party. *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.")

Just because discovery has revealed that someone other than Cowry caused Richland Partners' property damage does not mean that the case cannot proceed. This case is about whether Cowry damaged Richland Partner's property and/or committed other various torts after Richland Partners purchased the property. Determining these questions does not require additional parties. While the strength of Richland Partners' case against Cowry may wax and wane, there is no doubt that this Court can accord complete relief between Richland Partners and Cowry without the joinder of Phillips or Aminoil or other potentially responsible parties. Phillips is not a necessary party under Rule 19(a)(1)(A).

Richland Partners has not presented any evidence that Phillips has claimed an "interest relating to the subject of the action." *See* Rule 19(a)(1)(B); *see also United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) ("[j]oinder is contingent .

. . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action." (internal citations omitted) (emphasis in original)). Accordingly, this Court is not required to join Phillips under Rule 19(a)(1)(B).

Richland Partners contends that not joining Phillips would allow Cowry to use the "empty chair" defense by placing liability on a non-party. (Doc. 14 at 4). This concern may be addressed through proper motions in *limine* and does not require joinder. *See e.g.* 75 Am. Jur. 2d Trial § 39 ("motions in limine may be used to preclude arguments or references at trial where the reference or argument is not supported by the evidence, not relevant to the issues, or more prejudicial than probative.").

Finally, undue delay in filing is also grounds for denying Richland Partners' Rule 19 request. *Northeast Drilling Inc. v. Inner Space Services*, 243 F.3d 25 (1st Cir. 2001). In *Northeast Drilling*, the First Circuit denied joinder under Rule 19 because the moving party waited until after the passage of the deadline to join additional parties as specified in the pretrial scheduling order, did not ask the court for leave to modify the scheduling order in its Rule 19(a) motion, and did not articulate any "good cause" to excuse the belated filing. *Northeast Drilling Inc. v.*

*Inner Space Services*, 243 F.3d 25 (1st Cir. 2001). As discussed in the Rule 16 section, the same circumstances apply here.

## III. Conclusion

Richland Partners waited until after the deadline to request to amend, failed to request leave to modify the scheduling order in its initial motion, and failed to articulate "good cause" for the belated filing. In light of the findings above, this Court need not address Cowry's arguments that Richland Partners' amendment is futile. The motion is denied.

DATED this 29th day of September, 2014.

*/s/ Susan P. Watters*
SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE